## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Albert Ikechi,                                   **Civil No.: 10-4554 (JNE/SER)**

            Plaintiff,

v.                                             **REPORT AND RECOMMENDATION**

Verizon Wireless; Verizon
Wireless Cable Communications,
LLC; Verizon Wireless Digital Voice;
Verizon Wireless Corporation; Verizon
Wireless Digital Phone; John Doe, et al.,

            Defendants.

            Kallys Albert (a/k/a Albert Ikechi), *pro se*, 3615 McKinley Street NE, Minneapolis, MN
55418.

            Peter W. Wanning, Murnane Brandt, P.A., 30 East Seventh Street, Suite 3200, Saint Paul,
Minnesota, 55101, on behalf of Defendants.

STEVEN E. RAU, United States Magistrate Judge

            The above-entitled matter is before the undersigned on Defendant Verizon Wireless

(VAW), LLC's Motion to Dismiss and Compel Arbitration [Doc. No. 68].  The Honorable Joan

N. Ericksen referred the motion to this Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1 [Doc. No. 70].  For the reasons

set forth below, the Court recommends Defendant's motion be granted.

### I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY

            This case has been before the Court several times.  *Ikechi v. Verizon Wireless*, No. 10-

4554 (JNE/SER), 2011 WL 2118797 (D. Minn. Apr. 7, 2012); *Ikechi v. Verizon Wireless*, No.

10-4554 (JNE/SER), 2011 WL 2118791 (D. Minn. May 24, 2011); *Ikechi v. Verizon Wireless*,

No. 10-4554 (JNE/SER), 2011 WL 4403292 (D. Minn. Sept. 21, 2011).  As such, the Court need

not unnecessarily repeat the factual and procedural history.  *Ikechi*, 2011 WL 2118797 (D. Minn.

Apr. 7, 2012) *affirmed in part and reversed in part by Ikechi*, 2011 WL 2118791 (D. Minn. May

25, 2011).  The facts recited in previous opinions are, therefore, incorporated by reference.

    Plaintiff Albert Ikechi (a/k/a Kallys Albert)("Albert")[1] is representing himself *pro se* in

this action against Defendants Verizon Wireless, Verizon Wireless Cable Communications,

LLC, Verizon Wireless Digital Voice, Verizon Wireless Corporation, Verizon, Wireless Digital

Phone, and John Doe et al ("Verizon").  Albert's claims arise out of a dispute over July 2007

cellular phone service and billing contract.  (Compl. at 11, ¶ I) [Doc. No. 1-1].[2]  On October 25,

2010, Ikechi filed the instant action in Hennepin County District Court against Verizon and

Asurion Insurance Services, Inc. ("Asurion").[3]  Verizon removed the case to this Court on

November 15, 2010 and filed a motion to dismiss on November 22, 2010.  On November 24,

2010, Ikechi filed a motion to remand and filed a motion for judgment on the pleadings on

December 7, 2010.

    The "Dispute Resolution and Mandatory Arbitration" section of the service contract

Albert signed provides:

> **WE AGREE TO SETTLE DISPUTES ONLY BY ARBITRATION OR IN
> SMALL CLAIMS CORT AS PROVIDED BELOW.  THERE'S NO JUDGE
> IN ARBITRATION, BUT AN ARBITRATOR CAN AWARD THE SAME
> DAMAGES AND RELIEF, AND MUST HONOR THE SAME
> LIMITATIONS IN THIS AGREEMENT, AS A COURT WOULD.  IF AN
> APPLICABLE STATUTE PROVIDES FOR AN AWARD OF**

---

[1]     At oral argument, Plaintiff explained that "Albert Ikechi" was his name at the time he signed the Verizon cellular phone service contract at issue in this case.  His legal name has since changed to Kallys Albert.  Thus, the Court will recommend that the case caption be changed to reflect Plaintiff's name as "Kallys Albert."

[2]     The page numbers of Albert's complaint ("Compl.") [Doc. No. 1-1] differ from the page numbers in the ECF document.  In order to ensure consistency, the Court will refer to the page numbers as they appear in the ECF headings.

[3]     Asurion was voluntarily dismissed in January 2011.  [Doc. No. 40].

**ATTORNEY'S FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO EACH AGREE, TO THE FULLEST EXTENT PERMITTED BY LAW THAT:**

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT, EXCEPT FOR QUALIFYING SMALL CLAIMS COURT CASES, ANY CONTROVERSY OR CLAIM ARISING OUT OF THIS AGREEMENT, OR ANY PRIOR AGREEMENT FOR WIRELESS SERVICE WITH US OR ANY OF OUR AFFILIATES OR PREDECESSORS IN INTEREST, OR ANY PRODUCT OR SERVICE PROVIDED UNDER, OR ANY ADVERTISING FOR SUCH PRODUCTS OR SERVICES, WILL BE SETTLED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES AND THEY CAN, IF THE LAW ALLOWS, SEEK RELIEF AGAINST US ON YOUR BEHALF.

(2) UNLESS YOU AND VERIZON WIRELESS AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTRY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S WIRELESS INDUSTRY ARBITRATION ("WIA") RULES WILL APPLY. . . .

(Customer Agreement, Exhibit B, "Customer Agreement," attached to Aff. of. Peter W. Wanning, "Wanning Aff.") (emphasis in original) [Doc. No. 52-2 at 30].

At the March 7, 2011 hearing on the parties' then-pending motions, Verizon averred to the arbitration clause in the Customer Agreement. Because neither party addressed the implications of the arbitration clause in their moving papers, the Court stated in a footnote: "At oral argument, Verizon admitted that the service contract contained an arbitration provision. The Court strongly urges the parties to explore the possibility of arbitration pursuant to the contract rather than continue to litigate the case." *Ikechi*, 2011 WL 2118797, at * 10 n.14 (D. Minn. Apr. 7, 2011).

On May 25, 2011, Judge Ericksen dismissed ten of the twelve claims Albert alleged in his complaint (Counts I-II, IV-IX, and XI-XII) and exercised supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) (2006) over the state law breach of contract and unjust enrichment claims

3

(Counts III and X). *Ikechi*, 2011 WL 2118791, at \*1-\*4. Judge Ericksen also denied Albert's motion for remand and motion for judgment on the pleadings and granted Verizon's motion to strike portions of the complaint. *Id*. at \*4. Additionally, the order also permitted the parties to file supplemental memoranda as to the viability of Counts III and X. *Id*. After the supplemental briefing, Judge Ericksen dismissed Albert's breach of contract claim (Count III) "insofar as Plaintiff alleges that Verizon Wireless ("VAW") failed to replace his telephones" and dismissed the unjust enrichment claim (Count X) in its entirety. *Ikechi*, 2011 WL 4403292, at \*2-3 (D. Minn. Sept. 21, 2011). Thus, the only remaining claim in this action is Albert's limited breach of contract claim.

Verizon filed a sixteen-page answer to the remaining breach of contract claim on October 4, 2011. (Separate Answer of Verizon Wireless (VAW), LLC, "Answ.") [Doc. No. 58]. The answer explicitly mentions the arbitration clause in Verizon's twenty-second affirmative defense, which states in relevant part, "The Complaint may be barred, in whole or in part, because of the arbitration and provisions within Defendant's customer agreements." (Answ. at 15). The answer makes no other mention of the arbitration clause.

In January 2012, the parties filed separate Rule 26(f) reports. [Doc. Nos. 60-61]. The Court held a pretrial scheduling conference on January 23, 2012 and issued a pretrial scheduling order, which provides that fact discovery should be concluded by July 20, 2012 and that all dispositive motions must be scheduled before October 20, 2012. [Doc. Nos. 62-63]. Verizon filed the instant motion on March 19, 2012, nearly seven months before the dispositive motion deadline. Judge Ericksen referred Verizon's motion to this Court, which heard oral argument on May 21, 2012. [Doc. Nos. 70, 76].

In the past nine years, Albert (a/k/a Kallys Albert Sr./ Kallys Albert/ Ikechi Kallys Albert/ Albert Ikechi) has filed or attempted to file ten *pro se* complaints in this district.[4]  Albert, a serial *pro se* litigant, filed *in forma pauperis* applications in every one of the ten cases he filed. On several occasions, Albert has been referred the FBA *Pro Se* Project but declined counsel's assistance.  *Albert v. Principal Fin. Group et al*, No. 12-1224 (DWF/FLN) [Doc. No. 4]; *Albert v. Enter. Recovery Sys., Inc. et al*, No. 11-3529 [Doc. No. 9].  Of these ten cases two remain pending: the instant case and *Albert v. Principal Fin. Group et al*, No. 12-1224 (DWF/FLN), which was filed on May 21, 2012.

## II.    DISCUSSION

Verizon argues that Albert's consent to arbitrate any disputes that may arise out of the Customer Agreement is binding and that the Court must dismiss Albert's remaining claim and refer the case for arbitration.  Verizon relies on the unequivocal language of the service contract and the strong federal policy in favor of arbitration.  Albert contends that arbitrating the case would prejudice him because it would further delay the case, increase costs, and deprive him of a jury trial and the opportunity for appeal.  He also asserts that the arbitration clause is

---

[4]     *See Albert v. Principal Fin. Group et al*, No. 12-1224 (DWF/FLN); *Albert v. Enter. Recovery Sys., Inc. et al*, No. 11-3529 (ADM/SER); *Albert v. United States Dept. of Educ.*, No. 11-540 (DSD/JJK); *Albert v. Dakota Communities, Inc.*, et al, No. 08-cv-5871 (JMR/FLN); *Albert v. Illinois Farmers Ins. Co.*, No. 06-1250 (JNE/JJG), 2007 WL 2122145, at * 6 (D. Minn. Jul. 19, 2007) (granting defendants' summary judgment motions, denying Albert's motion for summary judgment); *Albert v. Dakota Communities, Inc. et al.*, No. 06-3672 (PAM/JSM), 2007 WL 128851, at * 2 (D. Minn. Jan. 12, 2007) (granting in part and denying in part defendants' motion to dismiss);  *Albert v. Qwest Commc'n Int'l et al*, No. 06-1251 (PJS/RLE); *Albert v. Larson*, No. 05-1632 (MJD/SRN), 2005 WL 3542872, at * 9-10 (D. Minn. Dec. 21, 2005) (granting in part and denying in part defendants' motion to dismiss); *Albert v. Lee et al*, No. 04-1014 (RHK/JSM); *Albert v. OSI Educ. Serv., Inc.*, No. 03-6122 (RHK/AJB), 2004 WL 483166, at * 3 (D. Minn. Mar. 11, 2004) (granting defendant's motion to dismiss); *see also Albert v. Rapid Recovery, Inc.*, No. 08-5801 (JNE/FLN), 2009 WL 277544, at * 1 (D. Minn. Feb. 4, 2009) (granting Albert's motion for remand).

unconscionable and that Verizon waived its right to arbitration because it chose to litigate the case for the past 16 months. Albert also rejects Verizon's contention that the FAA applies to the arbitration clause and requests that the Court "annul and invalidate" the arbitration clause based on the FAA savings clause, 9 U.S.C. § 2. (Pl.'s Reply Mem. of L. in Opp. to Verizon's Motions to Compel Arbitration, "Pl.'s Mem.") [Doc. No. 73 at 12].

A plain reading of the valid, enforceable arbitration clause reveals that the FAA applies and that the parties' dispute is within its scope. Though this is a close case as to whether Verizon waived its right to arbitrate, the well-established policy in favor of arbitration and the unambiguous, enforceable arbitration clause prevent a finding of waiver. The Court finds no basis upon which to invalidate the arbitration clause as unconscionable. As such, the Court recommends that Verizon's motion be granted, Albert's remaining claim be dismissed, and the case be remanded for arbitration.

### A. Jurisdiction.

The Federal Arbitration Act ("FAA") reflects the federal court's policy favoring arbitration as a form of dispute resolution. 9 U.S.C. § *1 et seq*. The FAA outlines the scope of the federal court's power to enforce an arbitration agreement and permits a party to move to compel arbitration in "any United States district court which, save for [the arbitration agreement], would have jurisdiction under Title 28, in a civil action. . . ." 9 U.S.C. § 4. Here, the subject matter jurisdiction is based upon Judge Ericksen's exercise of supplemental jurisdiction over Albert's remaining claim pursuant to 28 U.S.C. § 1367(a). *Ikechi*, 2011 WL 2118791, at *1-*2. (*Id*.). Albert's argument that the Court cannot compel arbitration when exercising supplemental jurisdiction is meritless and misplaced. (Pl.'s Mem. at 6). The Court

has jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Albert's remaining breach of contract claim under the FAA or any other applicable law.

### B. Validity of the Customer Agreement Arbitration Clause.

"A court's role under the FAA is . . .  limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (citing *Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 680 (8th Cir. 2001)).  The party seeking to compel arbitration "must demonstrate that a valid agreement to arbitrate exists."  *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011); *see Houlihan v. Offerman & Co.*, 31 F.3d 692, 694-95 (8th Cir. 1994).  Though the "'liberal federal policy favoring arbitration'" is well-established, the enforceability of arbitration agreements is evaluated on "on equal footing with other contracts." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011).

Albert does not dispute that he signed the Service Agreements, the terms and conditions of which are provided in the Customer Agreement containing the arbitration clause.  In five instances, Albert signed his name beneath text providing in relevant part: "I AM AGREEING TO . . . LIMITATIONS OF LIABLITY FOR SERVICE AND EQUIPMENT, SETTLEMENT OF DISPUTES BY ARBITRATION AND OTHER MEANS INSTEAD OF JURY TRIALS AN OTHER IMPORTANT TERMS IN THE [Customer Agreement]."  (Service Agreements, Ex. A attached to Wanning Aff.) [Doc. No. 52-1 at 3, 5-6, 13, 15, 20-21].[5]  Albert's argument that the arbitration clause is severable from the Customer Agreement, ignores the general rule that where a party does not "direct claims of fraud to the arbitration clause itself, a broad arbitration clause will be enforced and the parties will be forced to arbitrate their claims under the FAA." *Onvoy,*

---

[5]      The signature on three of the Service Agreements, is not readily identifiable as Albert's. (Service Agreements) [Doc. No. 52-1 at 9, 11, 18].

*Inc. v. SHAL, LLC*, 669 N.W.2d 344, 353 (Minn. 2003) (citing *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 403-04 (1967).   The broad arbitration clause in this case applies to "any controversy or claim arising out of or relating to [the Customer Agreement]." (Customer Agreement at 30).  In some circuits, however, courts have found exceptions when the underlying contract containing the arbitration clause is void.  *Onvoy*, 669 N.W.2d at 353 (internal citations omitted).  This exception does not apply here because Albert's fraud claims have been dismissed and the only remaining breach of contract claim relies on the Customer Agreement's validity for its viability.  *Ikechi*, 2011 WL 4403292, at *2-3 (D. Minn. Sept. 21, 2011); *see Briggs Transp. Co. v. Ranzenberger*, 217 N.W.2d 198, 200 (Minn. 1974), 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (explaining the four elements of a breach of contract claim: (1) contract formation; (2) plaintiff's performance of conditions precedent; (3) defendant's material breach; and (4) damages).

### C.  Scope of the Customer Agreement Arbitration Clause.

In construing arbitration clauses, any doubts "concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008).  The party opposing arbitration bears the burden of proving the parties' dispute lies outside the agreement's scope.  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91-92 (2000).  When interpreting arbitration clauses or agreements, courts should "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences v. Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

The only remaining claim is Albert's breach of contract claim (Count III) with respect to issues not related to replacing Albert's cellular phone.  (Compl. at 41-42, ¶ XXIX); *Ikechi*, 2011

WL 4403292, at *2-3 (D. Minn. Sept. 21, 2011). The remaining portion of this claim relates directly to the Customer Agreement because it alleges that Verizon's billing statements and charges violated the "terms and conditions of the parties contract (if any)." (Compl. at 41-42, ¶ XXIX). Albert's claim that he was billed improperly for data packages, ring tones, and additional service features to which he did not agree fall within the scope of the arbitration clause applicable to "any controversy or claim arising out of or relating to [the Customer Agreement]." (Customer Agreement at 30); (Compl. at 41-42, ¶ XXIX). This express term, to which Albert consented when he signed the Service Agreements, unambiguously reflects the parties' intent to arbitrate. (Service Agreements at 3, 5-6, 13, 15, 20-21). Albert's remaining breach of contract claim squarely falls within the scope of the arbitration clause.

**D. Verizon Did Not Waive Its Right to Arbitrate.**

Albert alleges that Verizon waived its right to arbitration when it removed the case to federal court, filed a motion to dismiss, ultimately answered the complaint, and participated in pretrial discovery. He further contends that Verizon's decision to litigate the case breached and invalidated the arbitration clause. (Pl.'s Mem. at 5). While this is a close case given Verizon's delay in moving to compel arbitration, the Court ultimately finds that no waiver occurred.

Though federal policy favors arbitration, a party may waive its arbitration. *See Lewallen v. Green Tree Fin. Serv., LLC*, 487 F.3d 1085, 1090-93 (8th Cir. 2007). "[The Eighth Circuit] appl[ies] a uniform three-factor test in determining whether a party has waived its right to arbitration, finding waiver when the party seeking arbitration '(1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions.'" *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1117

(8th Cir. 2011) (quoting *Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 920 (8th Cir. 2009)).

First, Verizon's twenty-second affirmative defense, which was asserted in its Answer filed in October 2011, refers explicitly to the arbitration clause.  (Answ. at 15).  Verizon also acknowledged its arbitration rights at oral argument in March 2011 and at the pretrial scheduling conference in January 2012.  Verizon appears to have been aware of the arbitration clause for at least one year prior to bringing its motion to compel arbitration.

With respect to the second factor, "[a] party acts inconsistently with its right to arbitrate if the party substantially invokes the litigation machinery before asserting its arbitration right." *Erdman*, 650 F.3d at 1117.  Verizon's decision to remove the case and file of a motion to dismiss arguably constitutes a decision to forgo its rights under the arbitration clause and litigate the case.  Yet, after answering the complaint in October 2011, the next motion Verizon filed was the instant motion to compel arbitration.  At no point did Verizon assert that the arbitration clause was not unenforceable or waived.  Though Albert's argument that Verizon "slept on its own legal rights" is appealing superficially, this case is distinguishable from cases finding waiver of arbitration rights as a consequence of filing several dispositive motions and engaging in substantive discovery before moving to compel arbitration.  *See Lewallen*, 487 F.3d at 1093-94 (emphasizing defendant waived arbitration rights by filing motions to dispose of case on the merits and waiting to file motion to compel arbitration until days before plaintiff's discovery responses were due); *Am. Dairy Queen Corp. v. Blume*, No. 11-358 (RHK/TNL), 2011 WL 6994715, at *12 (D. Minn. Dec. 2, 2011) (finding defendant waived right to arbitration by filing three motions to dismiss, transfer, or stay before filing a motion to compel arbitration).

In evaluating the third waiver factor, on a "case-by-case basis" the Eighth Circuit considers whether "[p]rejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration . . . or litigation of substantial issues going to the merits." *Stifel, Nicolaus & Co., Inc. v. Freeman*, 924 F.2d 157, 159 (8th Cir. 1991) (internal citation omitted); *see Erdman*, 650 F.3d at 119 (observing "circuit split on whether the party asserting waiver must show prejudice" and citing *Stifel Nicholas*). A party's delay in moving to compel arbitration "does not itself constitute prejudice." *Stifel Nicolaus*, 924 F.2d at 159 (internal citations omitted). Albert alleges prejudice based not only on Verizon's 16-month delay in filing its motion but also the "unnecessary expenses and costs to the [p]ro se Plaintiff." (Pl.'s Mem. at 6-7). While the Court understands Albert's frustration that Verizon decided to bring a dispositive motion before exercising its rights under the arbitration clause, it was Albert, not Verizon who brought this action. Arbitration will not result in a loss of evidence or a duplication of efforts because one limited breach of contract claim remains in the case and no counterclaims or parallel proceedings are at issue. Moreover, no significant discovery had taken place as of the date of the hearing on this motion.

Albert also asserts that compelling arbitration would deprive him of his right to a jury trial, right to appeal, and would "expos[e] him to absolute doctrines of res judicata, collateral estoppels [*sic*] and other limiting doctrines." (Pl.'s Mem. at 4). While Albert's concerns are understandable, the arbitration clause Albert signed stated, "**THERE'S NO JUDGE OR JURY IN ARBITRATION**." (Customer Agreement at 30) (emphasis in original). Resolution of the narrow set of facts at issue and the absence of a cognizable federal claim makes Albert's breach of contract claim ideal for arbitration. Based on the strong federal policy in favor of arbitration and in the interest of judicial efficiency and economy, the Court finds that Verizon did not waive

11

its rights and that the case should be remanded for arbitration.  *See* 9 U.S.C. § *1 et seq*; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *3M*, 542 F.3d at 1199.

### E. Albert's Challenges to the Arbitration Clause's Validity Based on the FAA Savings Clause are Without Merit.

Relying on the equity principles in the FAA savings clause, 9 U.S.C. § 2, Albert asks that the Court invalidate the arbitration clause of the Customer Agreement based on purported unconscionability and Verizon's breach of its obligation of good faith and fair dealing.  The FAA savings clause "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.'"  *AT&T Mobility*, 131 S. Ct. at 1746 (quoting 9 U.S.C. § 2).  "Generally applicable contract defenses, such as fraud, duress, and unconscionability" may invalidate an arbitration agreement.  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).  The arbitration clause will be analyzed under Minnesota law.[6] *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009) ("[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants"); *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In Minnesota, unconscionability is a question of law.  Minn. Stat. § 336.2-302. Unconscionability must be substantive and procedural, meaning that a plaintiff "must demonstrate 1) that it had no 'meaningful choice'" except to accept the term or contract "as offered" and "and 2) that the [term or contract] was 'unreasonably favorable'" to the defendant. *RJM Sales & Mktg., Inc. v. Banfi Products Corp.*, 546 F. Supp. 1368, 1375 (D. Minn. 1982) (internal citations omitted).  Albert has not made an adequate showing of unconscionability

---

[6]    The Customer Agreement does not appear to contain a choice of law provision, nor does Verizon point to one in its memorandum on the instant motion.  Thus, the Court will analyze the agreement under Minnesota law.

because he did not allege that he had no choice but to accept Verizon's Customer Agreement or that he could not negotiate more favorable terms with Verizon. Albert purchased the Verizon service contract for use in his travel services business operations; he is not an unsophisticated party. (Compl. at 11-12, ¶ II). Nor is he a stranger to litigation. *See supra* note 4.

Though courts may analyze such consumer agreements as contracts of adhesion, such an evaluation is not warranted here in the absence of specific facts demonstrating unequal bargaining power. *See Alexander v. Minn. Vikings Football Club*, 649 N.W.2d 464, 467-68 (Minn. Ct. App. 2002) (analyzing whether arbitration clause was contained in contract of adhesion); *Onvoy*, 669 N.W.2d at 352 n.6 (acknowledging critics' contentions "that mandatory arbitration clauses in consumer contracts are depriving people of their right to be heard in court"). Furthermore, Albert's remaining claim depends on the validity of the Customer Agreement. Voiding the agreement would unduly prejudice Albert's efforts to pursue his remaining claim.

Albert's contention that Verizon breached its obligation of good faith and fair dealing, is similarly unsubstantiated. Though good faith and fair dealing are implied in law, Albert has not shown that Verizon failed to abide by its obligation. *See In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) ("Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract") (internal citations omitted). Because Albert initiated this action, it was he, not Verizon, that hindered Verizon's exercise of its right to arbitrate. Verizon's assertion of its right to arbitrate is not in bad faith. The Court has already at length examined Albert's unavailing prejudice arguments in the context of analyzing waiver.

The Court finds no basis upon which to invalidate the arbitration clause pursuant to the FAA savings clause or any other equitable grounds.

### F.  Appointment of an Arbitrator.

Verizon's motion requests that the Court select a neutral arbitrator "pursuant to the Customer Agreement."  (Def. Verizon Wireless (VAW), LLC's Motion to Dismiss and Compel Arbitration) [Doc. No. 68 at 1].  Though federal courts have the power to designate an arbitrator, courts generally "will allow parties sufficient time to attempt to appoint an arbitrator themselves." *ATS Int'l v. LAP Distrib. PTE Ltd.*, No. 11-2207 (MJD/LIB), 2011 WL 6960971, at *8 (D. Minn. Dec. 2, 2011) (internal citations omitted).  The Customer Agreement provides a process through which the parties are to submit the case to a neutral arbitrator based on the American Arbitration Association ("AAA"), Better Business Bureau ("BBB"), and the AAA's Wireless Industry Arbitration ("WIA") rules.  (Customer Agreement at 30).  At the hearing, the parties represented that they had not yet made an attempt to appoint an arbitrator.  As such, the Court will not prematurely intervene and instead urges the parties to agree on an arbitrator within 30 days of the date upon which this report and recommendation is ruled upon.  In the event that the parties are unable to reach agreement on an arbitrator, the Court would entertain a joint request to informally resolve any remaining disputes.

### III.     RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED that**: Defendant Verizon Wireless (VAW), LLC's Motion to Dismiss and Compel Arbitration [Doc. No. 68] be **GRANTED** and the Plaintiff's name in the case caption be changed to "Kallys Albert."

Dated: July 6, 2012

                                                    s/ Steven E. Rau_____
                                                    STEVEN E. RAU
                                                    United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **July 20, 2012,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.